IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Wells Fargo Bank, N.A., | Case No. 0:23-cv-2734 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| MSA Mortgage, LLC, | |
| Defendant. | |

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), for its complaint against defendant MSA Mortgage, LLC ("MSA Mortgage") alleges as follows:

### Introduction

1. MSA Mortgage had a "correspondent lender" relationship with Wells Fargo.

2. In general, MSA Mortgage issued loans either to home buyers purchasing new residences or to homeowners who wish to refinance their residences. Those loans are secured by mortgages on the borrowers' residences.

3. MSA Mortgage then sold some of the mortgage loans to Wells Fargo.

4. A written agreement governs the terms under which MSA Mortgage sold mortgage loans to Wells Fargo. The agreement required MSA Mortgage to: (1) represent and warrant that each mortgage being sold has certain characteristics; (2) repurchase from Wells Fargo any mortgage that does not possess those characteristics; and (3) reimburse

Wells Fargo for certain losses, costs, and expenses associated with any repurchased mortgage.

5. MSA Mortgage violated its representations and warranties by selling to Wells Fargo at least one mortgage loan that did not have the required characteristics.

6. MSA Mortgage further breached its contractual obligations by refusing to repurchase and/or indemnify Wells Fargo for its losses on this loan and to indemnify Wells Fargo for certain losses, costs, and expenses that Wells Fargo incurred. MSA Mortgage also refused to pay fees due to Wells Fargo with respect to other transactions under the terms of the parties' contract.

7. Thus, Wells Fargo is suing to enforce MSA Mortgage's contractual obligations.

## Parties

8. Plaintiff Wells Fargo Bank, N.A. is a national banking association whose articles of association designate its main office as located in Sioux Falls, South Dakota, thus making it a citizen of South Dakota for purposes of diversity jurisdiction.

9. Defendant MSA Mortgage, LLC is a Massachusetts limited liability company with its principal place of business at Winthrop, Massachusetts. According to the Certificate of Organization of MSA Mortgage, LLC available at the Secretary of the Commonwealth of Massachusetts, Corporate Division, the managers/members of MSA Mortgage, LLC at the time of formation are: (1) Robert L. Deeb (citizen of Massachusetts); (2) Robert C. Winsor (citizen of Massachusetts); and (3) Christopher J. Young (citizen of Massachusetts). According to a January 2, 2018 Certificate of

Amendment of MSA Mortgage, LLC, available at the Secretary of the Commonwealth of Massachusetts, Corporate Division, Robert L. Deeb (citizen of Massachusetts) is now the only member of the LLC. Therefore, all of MSA Mortgage, LLC's members are citizens of the Commonwealth of Massachusetts for purposes of diversity jurisdiction. MSA Mortgage, LLC is therefore a citizen of the Commonwealth of Massachusetts for purposes of diversity jurisdiction.

## Jurisdiction and Venue

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Wells Fargo and MSA Mortgage are citizens of different states (South Dakota and Massachusetts, respectively) and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction over MSA Mortgage because MSA Mortgage contractually waived any objection to this Court's personal jurisdiction and agreed that any lawsuit between the parties would be pursued in Minnesota.

12. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims asserted in this action occurred in this District. Specifically, Wells Fargo has had substantial operations and personnel in Minnesota at all times relevant to this lawsuit.

## Facts

### A. The Parties Entered into the Loan Purchase Agreement.

13. On or about December 6, 2011, MSA Mortgage and Wells Fargo Bank, N.A. entered into an Amended and Restated Loan Purchase Agreement (the "LPA"). A

copy of the LPA is attached hereto as **Exhibit 1**. The LPA states the terms under which MSA Mortgage may sell residential mortgage loans to Wells Fargo.

14. Paragraph 1 of the LPA incorporates the terms of the Wells Fargo Funding Seller Guide ("Seller Guide"). The Seller Guide sets forth the representations and warranties that MSA Mortgage makes to Wells Fargo for every mortgage that MSA Mortgage sells to Wells Fargo.

15. Together, the LPA and Seller Guide (collectively, the "Contract") form the complete agreement between the parties.

16. In the Contract, MSA Mortgage agreed that it would sell to Wells Fargo only mortgage loans that met the requirements described in the Seller Guide.

17. Wells Fargo sold the loans that it purchased from MSA Mortgage to various investors, including Fannie Mae and Freddie Mac, which are government-sponsored enterprises chartered by Congress to keep liquidity flowing to mortgage lenders such as local and national banks, thrifts, credit unions, and other financial institutions.

18. When loans that MSA Mortgage sold to Wells Fargo, and Wells Fargo subsequently sold to an investor, did not meet the requirements of the purchasing investor, that purchasing investor would require Wells Fargo to repurchase and/or indemnify the investor for its losses on those loans.

19. When those loans were subsequently reviewed by Wells Fargo and found to not meet the requirements described in the Seller Guide between Wells Fargo and MSA Mortgage (and were therefore ineligible for sale under the Contract), then Wells Fargo, in

turn, is entitled to have MSA Mortgage repurchase and/or indemnify Wells Fargo for its losses on those loans that do not meet the requirements of the Seller Guide.

20. In addition to setting forth MSA Mortgage's representations and warranties regarding the characteristics of the mortgage loans that MSA Mortgage sold to Wells Fargo, the Contract also specified remedies for Wells Fargo should MSA Mortgage's contractual representations or warranties prove untrue with respect to a mortgage loan.

21. In accordance with section 305.03 of the Seller Guide, MSA Mortgage agreed that it would repurchase any loan that did not satisfy the contractual representations and warranties it had made to Wells Fargo.

22. In accordance with section 305.10 of the Seller Guide, MSA Mortgage further agreed to indemnify Wells Fargo for any liabilities, costs, and expenses, expressly including attorneys' fees, resulting from MSA Mortgage's breach of any representation or warranty.

23. In accordance with section 305.10 of the Seller Guide, MSA Mortgage also expressly agreed to indemnify Wells Fargo for losses resulting from the Real Estate Owned ("REO") process by which Wells Fargo acquires title to a mortgaged property through such means as foreclosure, taking a deed in lieu of foreclosure, abandonment of the property, or other reclamation of the property.

**B.    MSA Mortgage Breached Its Contractual Representations and Warranties with Regard to the "Hingham Loan" It Sold to Wells Fargo.**

24. MSA Mortgage sold at least one mortgage loan to Wells Fargo that violated MSA Mortgage's representations and warranties as set forth in the Contract.

25. On or around June 23, 2022, MSA Mortgage sold to Wells Fargo a residential mortgage loan (the last four digits of Wells Fargo's loan number for the loan are 2719) secured by a property in Hingham, Massachusetts (the "Hingham Loan"). A copy of the portion of the Loan Purchase Schedule, dated June 23, 2022, reflecting Wells Fargo's purchase of the Hingham Loan is attached hereto as **Exhibit 2**.

26. The Hingham Loan has an outstanding balance of at least $628,808.08 in principal, interest, and escrow advance, in addition to applicable fees and bears an interest rate of 5.125%.

27. The loan file for the Hingham Loan had a program violation because there was an excessive or unsupported debt-to-income ratio (DTI) for the borrower.

28. The Hingham Loan did not meet the requirements of the Seller Guide, and MSA Mortgage's sale of the Hingham Loan constituted a violation of MSA Mortgage's contractual representations and warranties to Wells Fargo.

29. Wells Fargo sustained a loss as a result of the Hingham Loan not meeting the requirements of the Seller Guide.

30. On or about August 3, 2023, Wells Fargo sent an invoice to MSA Mortgage for the amount that MSA Mortgage owed to Wells Fargo at that time to repurchase the Hingham Loan and/or indemnify Wells Fargo for its loss on the Hingham Loan and to pay fees and penalties as specified in the Contract.

31. MSA Mortgage refused to repurchase the Hingham Loan and/or indemnify Wells Fargo for its loss on the Hingham Loan and refused to pay fees and penalties as specified in the Contract.

32. The amount that MSA Mortgage currently owes to Wells Fargo to repurchase the Hingham Loan and pay fees and penalties under the Contract is at least $628,808.08.

## COUNT I
### (Breach of Contract—Specific Performance)

33. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

34. MSA Mortgage breached the Contract when it sold the Hingham Loan to Wells Fargo. With respect to the sale of the Hingham Loan, MSA Mortgage violated representations and warranties as set forth in the Seller Guide.

35. The Contract, including but not limited to section 305.03 of the Seller Guide, requires MSA Mortgage to repurchase the Hingham Loan as a consequence of MSA Mortgage's breach of representations and warranties set forth in the Seller Guide.

36. Wells Fargo notified MSA Mortgage that MSA Mortgage had breached representations and warranties for the Hingham Loan and demanded that MSA Mortgage repurchase the loan.

37. To date, MSA Mortgage has refused to repurchase the Hingham Loan.

38. MSA Mortgage has materially breached the Contract, including section 305 of the Seller Guide, by refusing to honor its obligation to repurchase the Hingham Loan.

39. Wells Fargo is entitled to an order requiring MSA Mortgage to repurchase the Hingham Loan.

## COUNT II
### (Breach of Contract—Loan Representations and Warranties)

40. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

41. MSA Mortgage breached its representations and warranties as set forth in the Seller Guide with regard to the sale of the Hingham Loan. MSA Mortgage's sale of this loan to Wells Fargo therefore breached the Contract.

42. Wells Fargo has demanded, in accordance with the Contract terms, that MSA Mortgage repurchase the Hingham Loan. MSA Mortgage has further breached the Contract by refusing to repurchase the loan.

43. Wells Fargo has demanded that MSA Mortgage pay certain fees and costs, as specified in the Contract, arising from the Hingham Loan. MSA Mortgage has further breached the Contract by failing to pay fees and costs for this loan as specified in the Contract.

44. Wells Fargo has suffered damages as a result of MSA Mortgage's breaches of the Contract in the amount of at least $628,808.08. This amount includes the unpaid balance, accrued interest, escrow advance, and service-release premium, as applicable, plus other fees and costs, for the Hingham Loan.

## COUNT III
### (Contractual Attorneys' Fees)

45. Wells Fargo incorporates the averments in the preceding paragraphs as if fully restated herein.

46. Under the Contract, MSA Mortgage agreed to indemnify Wells Fargo for all costs, including attorneys' fees, incurred by Wells Fargo in enforcing its rights under the Contract.

47. As a result of MSA Mortgage's failure to honor its contractual obligations, Wells Fargo has incurred costs and attorneys' fees to enforce its rights under the Contract.

48. Wells Fargo is entitled to recover the attorneys' fees and related costs that it has incurred and will incur in prosecuting this lawsuit to enforce its rights under the Contract.

**WHEREFORE**, Wells Fargo Bank, N.A., respectfully asks that the Court:

1. Enter an order requiring MSA Mortgage to repurchase the Hingham Loan in accordance with the Contract;

2. Enter judgment in favor of Wells Fargo and against MSA Mortgage in the amount of all damages, costs, and expenses that Wells Fargo has suffered and will suffer in the future as a result of MSA Mortgage's breaches of its contractual obligations (an amount currently in excess of $628,808.08), plus all costs and expenses (including attorneys' fees) that Wells Fargo incurs in connection with this litigation, plus pre-judgment interest at the legal rate; and

3. Award any additional relief that the Court deems just and equitable.

| | |
|---|---|
| Dated: September 6, 2023 | **FAEGRE DRINKER BIDDLE & REATH LLP**<br><br>*/s/ Joelle Groshek*<br>Joelle Groshek (#0398377)<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN  55402-3901<br>Telephone: (612) 766-7000<br>Fax: (612) 766-1600<br>joelle.groshek@faegredrinker.com<br><br>and<br><br>Lance W. Lange, *pro hac vice* forthcoming<br>Iowa Bar No.: AT00004562<br>801 Grand Avenue, 33rd Floor<br>Des Moines, IA  50309<br>Telephone: (515) 447-4725<br>lance.lange@faegredrinker.com<br><br>*Counsel for Plaintiff Wells Fargo Bank, N.A.* |